— FOR REPORTER PUBLICATION —

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-cv-23026-GAYLES

**RIZVAN ZIA,** *on behalf of himself and all others similarly situated*,
            Plaintiff,

    v.

**CITIMORTGAGE, INC.,** and
**CITIBANK, N.A.,**
            Defendants.
_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendants CitiMortgage, Inc. ("CitiMortgage"), and Citibank, N.A.'s ("Citibank") Motion Dismiss [ECF No. 49]. The Defendants urge this Court to dismiss this case for lack of subject matter jurisdiction, arguing that, under the recent Supreme Court decision of *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), Zia cannot establish that he has standing to sue as required by Article III of the U.S. Constitution. The Court has reviewed the Complaint, the briefs and supplemental filings of counsel, and the applicable law and is otherwise fully advised in the premises. For the reasons that follow, the motion to dismiss shall be granted.

### I.    BACKGROUND

According to the allegations in the Complaint, the Plaintiff, Rizvan Zia, alleges that he obtained a mortgage on his property located at 4 Martine Avenue, White Plains, New York (the "Property"), from CitiMortgage (the "First Mortgage"). Compl. ¶ 12. He subsequently obtained a Home Equity Line of Credit on the same property from Citibank (the "Second Mortgage"). *Id.* ¶ 13. On July 30, 2013, Zia sold the Property and used the proceeds from the sale to satisfy all principal, interest, and other amounts due to the Defendants on both mortgages. *Id.* ¶ 14. The

satisfaction-of-mortgage documents for the First Mortgage were recorded in the Westchester County, New York, Clerk's Office on October 3, 2013 (sixty-five days after July 30, 2013). *Id.* ¶¶ 16-17. The satisfaction-of-mortgage documents for the Second Mortgage were recorded in the Westchester County Clerk's Office on September 18, 2013 (fifty days after July 30, 2013). *Id.* ¶¶ 18-19.

Zia filed the instant prospective class action on August 12, 2015, alleging that the Defendants' failure to timely present certificates of discharge for his mortgages violates two provisions of New York statutory law: Real Property Actions and Proceedings Law ("RPAPL") § 1921 and Real Property Law ("RPL") § 275. Zia seeks statutory damages under those statutes. He also purports to bring suit on behalf of a putative class and "Sub-Class" of similarly situated New York mortgagors whose satisfaction of mortgage documents allegedly were not recorded within 30 days of the date their mortgages were paid off. Compl. ¶¶ 22-23.

On March 22, 2016, this Court stayed this matter pending the U.S. Supreme Court's decision in *Spokeo*, which granted certiorari on the question of "[w]hether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute." Pet. for Writ of Certiorari, at i, *Spokeo*, 136 S. Ct. 1540 (No. 13-1339), 2014 WL 1802228, at *i. The Supreme Court issued its decision on May 16, 2016, and the Defendants now move to dismiss the Complaint for lack of subject matter jurisdiction, arguing that Zia does not have standing to sue.

## II.   LEGAL STANDARD

"[T]he doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). As the party invoking federal jurisdiction, Zia bears the burden of demonstrating that he has standing to sue. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990). The "irreducible constitutional minimum of

standing" requires an "injury in fact" that is both "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted). A plaintiff must also demonstrate "a causal connection between the injury and the conduct complained of," and "a likelihood that a court ruling in [the plaintiff's] favor would remedy [his] injury." *Id.* As standing is a threshold determinant, the plaintiff must "clearly . . . allege facts demonstrating" standing. *Warth v. Seldin*, 422 U.S. 490, 518 (1975). And given that this case is brought as a putative class action, "[t]hat a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (quoting *Warth*, 422 U.S. at 502).

## III. DISCUSSION

### A. *The* Spokeo *Decision*

*Spokeo* involved alleged violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* A purpose of the FCRA is to guarantee "fair and accurate credit reporting." *Id.* § 1681(a)(1). To that end, the statute imposes several requirements concerning the creation and use of consumer reports, including that consumer reporting agencies must "follow reasonable procedures to assure maximum possible accuracy of the information" contained within consumer reports, *id.* § 1681e(b); notify providers and users of consumer information of their responsibilities under the Act, *id.* § 1681e(d); limit the circumstances in which those agencies provide consumer reports "for employment purposes," *id.* § 1681b(b)(1); and provide free annual reports, *id.* § 1681j(a). If a consumer reporting agency willfully fails to comply with any of the Act's requirements, an individual may recover either actual damages or statutory damages of $100 to $1,000 per violation,

3

attorneys' fees and costs, and possibly punitive damages. *Id.* § 1681n(a).

Spokeo itself was alleged to qualify as a "consumer reporting agency" under the FCRA. The Supreme Court described the circumstances giving rise to the plaintiff's complaint:

> Spokeo operates a "people search engine." If an individual visits Spokeo's Web site and inputs a person's name, a phone number, or an e-mail address, Spokeo conducts a computerized search in a wide variety of databases and provides information about the subject of the search. Spokeo performed such a search for information about Robins, and some of the information it gathered and then disseminated was incorrect. When Robins learned of these inaccuracies, he filed a complaint on his own behalf and on behalf of a class of similarly situated individuals.

*Spokeo*, 136 S. Ct. at 1544. In his complaint, Robins alleged that Spokeo willfully failed to comply with the FCRA requirements listed above. *Id.* at 1546.

The Supreme Court explained that the case primarily concerned the injury-in-fact requirement, which is "a constitutional requirement, and '[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" *Id.* at 1547-48 (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997)). The injury-in-fact requirement requires that an injury be "particularized," in that it "must affect the plaintiff in a personal and individual way," but that it also be "concrete." *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560 n.1). In the decision below, the Ninth Circuit had concluded that Robins' complaint alleged a concrete injury because he "allege[d] that Spokeo violated ***his*** statutory rights, not just the statutory rights of other people," and because "Robins's personal interests in the handling of his credit information are ***individualized rather than collective***." *Id.* (emphasis in original). In the Supreme Court's view, however, the Ninth Circuit's analysis "elided" the distinction between the two requirements, *i.e.*, "[b]oth of those observations concern particularization, not concreteness." *Id.* The Court continued, "A 'concrete' injury must be '*de facto*'; that is, it must actually exist. . . . When we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term—'real,' and not 'abstract.'" *Id.* (citations omitted).

4

The Court noted that "'[c]oncrete' is not, however, necessarily synonymous with 'tangible.'" *Id.* at 1549. While "Congress is well positioned to identify intangible harms that meet minimum Article III requirements," its "role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* Standing under Article III "requires a concrete injury even in the context of a statutory violation." *Id.* And because a concrete injury must "actually exist" and must be "real," not "abstract," *id.* at 1548, the Court explained that a plaintiff "could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 1549 (citing *Summers v. Earth Is. Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing.")). That said, the Court recognized that "the risk of real harm" could "satisfy the requirement of concreteness" and that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Id.*

> Applying that analysis to the facts of the case, the Court ruled:
>
> On the one hand, Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk. On the other hand, Robins cannot satisfy the demands of Article III by alleging a bare procedural violation. A violation of one of the FCRA's procedural requirements may result in no harm. For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate. In addition, not all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm. . . .
>
> . . . [T]he Ninth Circuit . . . did not address the question framed by our discussion, namely, whether the particular procedural violations alleged in this case entail a degree of risk sufficient to meet the concreteness requirement.

*Id.* at 1550. The Court took no position as to whether Robins had, in actuality, adequately alleged an injury in fact.

5

## B.  *The Plaintiff Has Not Sufficiently Alleged Standing*

In the months since *Spokeo* was decided, federal courts around the country have created a substantial and growing body of law interpreting the case, as reflected in the several notices of supplemental authority filed by both parties separate from and subsequent to their briefs on the motion to dismiss. [ECF Nos. 52, 55, 58, 60, 62, 71, 72, & 75-77]. The Court has reviewed these and other decisions and, after careful consideration, concludes that Zia has failed to allege a concrete injury that establishes Article III standing.

A recent decision by the U.S. Court of Appeals for the Eighth Circuit, *Braitberg v. Charter Communications, Inc.*, — F.3d —, 2016 WL 4698283 (8th Cir. Sept. 8, 2016), is persuasive on this issue. In *Braitberg*, the plaintiff signed up for cable services with the defendant cable company in 2007. As a prerequisite to activating those services, the company required the plaintiff to provide personally identifiable information, such as his address, telephone number, and social security number. The plaintiff cancelled his cable services in 2010. In 2013, the plaintiff contacted the defendant company and confirmed that the company had retained all of the personally identifiable information he had provided in 2007. He then filed suit under a section of the Cable Communications Privacy Act, 47 U.S.C. § 551(e), which provides that "[a] cable operator shall destroy personally identifiable information if the information is no longer necessary for the purpose for which it was collected and there are no pending requests or orders for access to such information [by the subscriber] or pursuant to a court order." The plaintiff alleged that the company's retention of his information years after it was no longer needed to provide services, collect payments, or satisfy its tax, accounting, or other legal obligations, violated his rights and the rights of a putative class of the defendant company's former cable service subscribers under the Act. The plaintiff argued that a violation of that statutory right constituted an injury in fact sufficient, on its own, to establish Article III standing and that he did not need to allege or show "actual injury" arising from the

retention of his personal information.

The Eighth Circuit disagreed. It first looked to two former decisions, *Hammer v. Sam's East, Inc.*, 754 F.3d 492, 498-99 (8th Cir. 2014), and *Charvat v. Mutual First Federal Credit Union*, 725 F.3d 819, 822 (8th Cir. 2013), which "seemed to accept th[e] view" the plaintiff espoused. In *Hammer*, for example, the court, citing both *Charvat* and *Warth*, "declared that 'the actual-injury requirement may be satisfied *solely* by the invasion of a legal right that Congress *created*." *Braitberg*, 2016 WL 4698283, at *4 (quoting *Hammer*, 754 F.3d at 498). But *Spokeo*, the court reasoned, "rejected this absolute view" and superseded both *Hammer* and *Charvat*. The court then looked to the language in *Spokeo* that acknowledged Congress' ability "to identify intangible harms that meet minimum Article III requirements," but "emphasized that 'Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Braitberg*, 2016 WL 4698283, at *4 (quoting *Spokeo*, 136 S. Ct. at 1549). Following *Spokeo*, the Eighth Circuit concluded that the plaintiff's complaint asserted "a bare procedural violation, divorced from any concrete harm." *Id.* (quoting *Spokeo*, 136 S. Ct. at 1549). He had alleged only that the cable company violated its duty to destroy personally identifiable information by retaining that information longer than it should have. He had not alleged that the company disclosed that information to a third party, that any outside party accessed that information, or that the company used the information in any way during the disputed period of time. And he had identified "no material risk of harm from the retention." *Id.* Because the plaintiff had failed to allege a concrete harm, he lacked Article III standing.

The Court finds the Eighth Circuit's reasoning in *Braitberg* persuasive and adopts that reasoning here in holding that Zia has not alleged a concrete harm sufficient to establish Article

7

III standing. Zia alleges the following in his Complaint, in pertinent part:

> 27. CitiMortgage systematically fails to timely present certificates of discharge, as required by N.Y. Real Prop Acts. Law § 1921. . . .
>
> 28. Here, CitiMortgage failed to present, or arrange for presentment, a certificate of discharge for recording within 30 days of the date upon which the full amount of principle [sic] and interest was paid on the [] Mortgage . . . .
>
> 29. By reason of the foregoing, CitiMortgage has violated N.Y. Real Prop. Acts. Law § 1921 and is liable to Plaintiff and the other members of the Class for the statutory damages that are due. . . .
>
> 32. Defendants systematically fail to timely present certificates of discharge, as required by N.Y. Real Prop Law § 275. . . .
>
> 33. Here, Defendants failed to present or arrange for presentment a certificate of discharge for recording within 30 days of the date upon which the full amount of principle [sic] and interest was paid on the mortgages . . . .
>
> 34. By reason of the foregoing, Defendants have violated N.Y. Real Prop. Law § 275 and are liable to Plaintiff and the other members of the Class for the statutory damages that are due.

Compl. ¶¶ 27-29, 32-34. Under both counts, Zia states that the Defendants (or, in the case of Count I, CitiMortgage only) systematically fail to present the certificates of discharge as required by the statutes; states that the Defendants failed to present the specific certificates of discharge for the mortgages at issue in this case; and concludes that, as a result, the Defendants violated the respective statutes. There are no allegations here of any injury other than bare procedural violations— statute *X* requires *Y*; Defendants did not do *Y*; thus, Defendants violated statute *X*, which caused injury to the Plaintiff. He alleges only that the Defendants waited too long before filing the satisfaction of mortgage documents. He makes no allegation, for example, that there existed a cloud on the title to his property as a result of the Defendants' failure to timely file these documents or that he was in any other way prohibited or deterred from transferring the property or obtaining any additional lien. *Cf. Jaffe v. Bank of America, N.A.*, — F. Supp. 3d —, 2016 WL 3944753, at *4 (S.D.N.Y. July 15, 2016) (in a case involving alleged violations of RPAPL § 1921 and RPL § 275, finding that that the plaintiffs **had** established a concrete injury because they alleged that the defend-

ant's failure to timely file a mortgage satisfaction notice "created a 'real risk of harm' by clouding the titles to their respective properties"). He has identified no tangible or intangible harm that he suffered, other than the fact that the delay in recording occurred; and he has identified no "material risk of harm" from the delay, *Braitberg*, 2016 WL 4698283, at *4—simply the delay itself.

Another recently decided case that supports a finding that Zia has failed to allege a concrete injury is *Hancock v. Urban Outfitters, Inc.*, — F.3d —, 2016 WL 3996710 (D.C. Cir. July 26, 2016). There, two plaintiffs made purchases with credit cards at different clothing stores. As part of those credit card transactions, the cashiers asked each plaintiff for her zip code, and each plaintiff provided it. The plaintiffs then filed suit, alleging that those zip code requests violated two D.C. consumer protection laws. The D.C. Circuit held that the plaintiffs did not have standing:

> The complaint here does not get out of the starting gate. It fails to allege that [either plaintiff] suffered any cognizable injury as a result of the zip code disclosures. Indeed, at oral argument [plaintiffs'] counsel candidly admitted that "the only injury . . . that the named plaintiffs suffered was they were asked for a zip code when . . . [under] the law they should not have been." In other words, they assert only a bare violation of the requirements of D.C. law in the course of their purchases.

*Id.* at *2 (citation omitted). The plaintiffs, like Zia here, relied on *Warth*, in which the Supreme Court stated that "[t]he actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." 422 U.S. at 500 (citations and internal quotation marks omitted); *see also* Pl.' Opp'n at 12. But those plaintiffs, like Zia, "vastly overread that case," because the Supreme Court "has been clear that the legislature 'cannot erase Article III's standing requirements by statutorily granting the right to sue a plaintiff who would not otherwise have standing' under Article III." *Hancock*, 2016 WL 3996710, at *3 (quoting *Spokeo*, 136 S. Ct. at 1547-48). "Instead, an asserted injury to even a statutorily conferred right must actually exist . . . ." *Id.* (citations and internal quotation marks omitted).

Here, Zia has advanced a "naked assertion" that the satisfaction-of-mortgage documents

9

for the two mortgages were filed beyond the thirty-day time period "without any concrete consequence." *Id.* Such an assertion does not amount to a concrete injury, as contemplated by *Spokeo* (and Article III generally), and is therefore insufficient to confer standing.

\* \* \*

Zia contends that "[i]t is black letter law that Congress, or in this case a state legislature, can create new statutory rights the deprivation of which creates a concrete injury for standing purposes" and argues that "*Spokeo* did not change this rule." Pl.'s Opp'n at 3. He also states that the Supreme Court in *Spokeo* "unanimously reaffirmed a core principle: Legislatures may define the substantive duties members of society owe each other, and the violation of such duties will establish injury in fact." Pl.'s Opp'n at 4. These statements are now plainly false. The thrust of Zia's argument is that because the New York State Legislature created a statutory right, that right per se confers standing. But whatever the veracity of this principle may have been prior to *Spokeo*, the principle has been rendered a nullity in its wake. "[T]he deprivation of a right created by statute must be accompanied by 'some concrete interest that is affected by the deprivation'"; a holding that the statutory violation is alone sufficient to establish standing would impermissibly "conflat[e] the concepts of statutory and constitutional standing." *Lee v. Verizon Commc'ns, Inc.*, — F.3d —, 2016 WL 4926159, at *1-2 (5th Cir. Sept. 15, 2016) (alteration in original) (quoting *Spokeo*, 136 S. Ct. at 1549).[1]

---

[1] To the extent that Zia argues that the statutes' history or the judgment of the New York Legislature mandate the finding that his alleged injury is concrete, those arguments fail.

In *Spokeo*, the Supreme Court said, "[I]t is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." 136 S. Ct. at 1549 (citing *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773-78 (2000); *Coleman v. Miller*, 307 U.S. 433, 460 (1939) (opinion of Frankfurter, J.). Zia argues that "the right to seek a remedy in New York courts for mortgagors who do not timely file mortgage satisfactions has a long and illustrious history" and that "[t]he amendments to RPAPL § 1921 and RPL § 275 merely codified the injury (which existed at common law and which provided a basis for a lawsuit in New York courts) resulting from an untimely recorded satisfaction of mortgage." Pl.'s Opp'n at 16-17. But each of the cases Zia cites in support of this "long and illustrious history" involves a cause of action arising from circumstances where a satisfaction of mortgage had not been recorded, ***not*** where, as here, the filing of the satisfaction had been briefly delayed.

10

Zia invokes an unpublished, post-*Spokeo* Eleventh Circuit decision, *Church v. Accretive Health, Inc.*, — F. App'x —, 2016 WL 3611543 (11th Cir. July 6, 2016) (per curiam), arguing that it mandates the conclusion that he **has** sufficiently alleged an injury in fact. In that case, the plaintiff brought a claim under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, based on the defendant's alleged failure to provide disclosures in a debt collection letter. A panel of the Eleventh Circuit concluded that the plaintiff had standing to sue, as "Congress provided [the plaintiff] with a substantive right to receive certain disclosures [under the FDCPA] and [the plaintiff] has alleged that [the defendant] violated that substantive right." *Id.* at *3 n.2.

*Church* is one of many cases involving so-called "informational standing," where a plaintiff has standing because he seeks to enforce a statutory disclosure requirement. Other informational standing cases include *FEC v. Akins*, 524 U.S. 11, 21-22, 26 (1998), and *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440, 445-47, 449-50 (1989), in which the Supreme Court found that plaintiffs had informational standing where they sued over whether certain organizations were subject to disclosure requirements in the Federal Election Campaign Act and the Federal Advisory Committee Act, respectively. And in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-75 (1982), the plaintiffs sought to compel compliance with statutory provisions that guaranteed a right

---

This Court has considered the statutes' histories and finds that the statement upon which Zia relies—that "the penalties provided for in RPAPL § 1921(a) and RPL § 275(1) do not enlarge the common-law cause of action for satisfaction of a mortgage or grant additional remedies for a mortgagees' failure to satisfy a mortgage," Pl.'s Opp'n at 17 (quoting *Whittenburg v. Bank of Am., N.A.*, No. 14-0947, 2015 WL 2330307, at *3 (S.D.N.Y. Mar. 24, 2015))—is inaccurate. Prior to the current version of the statutes (both amended in 2005), the common law cause of action for satisfaction of a mortgage granted only the remedy of the mortgage's satisfaction and only if the mortgagee had willfully and unjustifiably refused to satisfy the mortgage. The amendments by the New York Legislature ***did*** enlarge the common law cause of action by purporting to grant a plaintiff the right to sue for a ***delay*** in satisfaction, even if the mortgage had been satisfied at the time the suit is brought. These amendments did not "merely codif[y] the injury which existed at common law," Pl.'s Opp'n at 17 (internal punctuation omitted), but rather created a new injury out of whole cloth. For these reasons, the Court declines to adopt the decision—upon which Zia also relies—in *Bellino v. JPMorgan Chase Bank, N.A.*, — F. Supp. 3d —, 2016 WL 5173392 (S.D.N.Y. Sept. 21, 2016), a case involving the same statutory provisions here, in which the court concluded that the statutes' history did support a finding that the plaintiff's injury was concrete. In making that finding, the court conflates clouded title, which ***is*** a harm traditionally recognized at common law, and the delay complained of here, which this Court has already found is not.

Therefore, the statute's history does not support a finding that a violation of RPAPL § 1921(a) or RPL § 275(1) results in concrete harm sufficient to confer standing.

11

to receive information in a particular form. By contrast, in *Friends of Animals v. Jewell*, — F.3d —, 2016 WL 3854010, at *4-5 (D.C. Cir. July 15, 2016), the D.C. Circuit held that the plaintiff did not have informational standing, because the statutory provision the plaintiff was attempting to enforce was merely a deadline requirement that did not obligate the defendant to actually *disclose* any information. The court held, based on *Spokeo*, that the bare violation of the statute was not a concrete and particularized injury sufficient to confer standing. *Id.*

The Supreme Court has held time and again that the violation of a statutory right to receive information one is entitled to receive creates a concrete injury sufficient to confer standing on a plaintiff. *Church* falls right in line with those cases; it, too, concerns a plaintiff who sought to enforce a statutory disclosure requirement. But this case is not one of those cases. Zia was not entitled to receive any information from the Defendants. Instead, he, like the plaintiff in *Friends of Animals*, seeks to enforce a deadline, and thus his reliance on informational standing cases is misplaced. *See, e.g.*, *Fisher v. Enter. Holdings, Inc.*, No. 15-0372, 2016 WL 4665899, at *4 (E.D. Mo. Sept. 7, 2016) (distinguishing *Church* on these same grounds); *cf., e.g.*, *Lane v. Bayview Loan Servicing, LLC*, No. 15-10446, 2016 WL 3671467, at *3-4 (N.D. Ill. July 11, 2016) ("The information-access cases cited by *Spokeo* suggest that, in this case, [the plaintiff] has alleged a sufficiently concrete injury because he alleges that [the defendant] denied him the right to information due to him under the FDCPA.").

Next, Zia attempts to rely on *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245 (11th Cir. 2015), where the Eleventh Circuit held that a plaintiff had Article III standing to bring suit alleging a violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(3), that arose from a "junk" fax (an unsolicited one-page fax advertisement) sent to the plaintiff by the defendant. In particular, the court found that the plaintiff had satisfied the injury requirement "because it has suffered a concrete and personalized injury in the form of

12

the occupation of its fax machine for the period of time required for the electronic transmission of the data (which, in this case was one minute)." *Palm Beach Golf Center*, 781 F.3d at 1251. The court found support in the legislative history of the TCPA, which made clear that the statute's "prohibition against sending unsolicited fax advertisements was intended to protect citizens from the loss of the use of their fax machines during the transmission of fax data." *Id.* at 1252 (citing H.R. Rep. No. 102-317, at 10 (1991) ("FACSMILE ADVERTISING [:] . . . This type of tele-marketing is problematic [because] . . . it occupies the recipient's facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk fax.")). This Court is unwilling to extend *Palm Beach Golf Center*'s analysis, which focused on the tangible injury of the occupation of the plaintiff's fax machine under a completely different statutory scheme, to govern the intangible injury that Zia alleges here pursuant to two New York state statutes, merely because both cases involve the alleged violation of a statutorily created right.

Finally, Zia argues that the Legislature's "central purpose" in enacting the amendments was "to deter mortgagees from being untimely," a purpose that he believes is reflected in the fact that the statutes provide for escalating penalties. Pl.'s Opp'n at 18 n.12. In Zia's view, a violation of a statute that grants the right to file suit to collect statutory damages elevates that right to a concrete injury. Not so. Such an interpretation directly contradicts the express language of *Spokeo*, which this Court has already recited: "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." 136 S. Ct. at 1549.

The entitlement to statutory damages does not, on its own, amount to a concrete injury.[2]

---

[2] Rather, such an allegation serves to satisfy the ***redressability*** requirement of Article III standing. *See, e.g.*, *Cuellar-Aguilar v. Deggeller Attractions, Inc.*, 812 F.3d 614, 620-21 (8th Cir. 2015).

If a damages provision was all that was required to confer an injury in fact, the above language from *Spokeo* would be meaningless—any legislative body could make an end-run around the strictures of Article III standing by simply including a damages provision in a statute. The Supreme Court would not allow this and neither will this Court. *See, e.g.*, *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2667 (2013) (explaining that "[s]tates cannot alter" the limited role of the Federal Judiciary under Article III "simply by issuing to private parties who otherwise lack standing a ticket to the federal courthouse").

## IV.   CONCLUSION

In sum, Zia has offered nothing to meet his burden to persuade this Court that his alleged injury in concrete. His contention that the existence of the statute and the fact of the violation itself makes his alleged injury concrete is simply not enough. The Court therefore concludes that Zia has failed to allege the existence of a concrete, particularized injury in fact sufficient to establish standing under Article III. Accordingly, it is

**ORDERED AND ADJUDGED** that the Defendants' Motion to Dismiss is **GRANTED**. The Plaintiff's Complaint [ECF No. 1] is **DISMISSED WITHOUT PREJUDICE**.

This action is **CLOSED** and all other pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 26th day of September, 2016.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE